**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

FILED
Scott L. Poff, Clerk
United States District Court

By staylor at 11:48 am, Aug 30, 2019

TERRY WARDEN,

          Plaintiff,

      v.

ANDREW SAUL, Commissioner of Social
Security,

          Defendant.

CIVIL ACTION NO.: 5:17-cv-168

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ" or "ALJ Casher") denying her claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision and find that Plaintiff was disabled as of her date last insured or, in the alternative, that the case be remanded for additional consideration. Doc. 14 at 30. Defendant asserts the Commissioner's decision should be affirmed. Doc. 15 at 16. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on August 7, 2014, alleging that she became disabled on May 15, 2013 due to anxiety, depression, spinal stenosis, degenerative disc disease, and back pain. Doc. 8-2 at 94–95 (R. 93–94). Plaintiff's date last insured was December 31, 2013. Id. at 17 (R. 16). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On

January 6, 2017, ALJ Casher conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified from Waycross, Georgia.  Id.  Kim E. Bennett, a vocational expert, also appeared at the hearing.  Id.  ALJ Casher found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since May 15, 2013.  Id.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2 (R. 1).

Complicating Plaintiff's claim, Plaintiff suffered an aneurysm and later a stroke during 2014 after her date last insured.[1]  Id. at 94–95 (R. 93–94).  Additionally, Dr. Marc Eaton, a consultative psychologist, diagnosed Plaintiff with vascular dementia after her date last insured.  Doc. 8-18 at 24 (R. 1246).  This deterioration of Plaintiff's mental faculties subsequent to her date last insured led ALJ Casher to state that, as of the January 6, 2017 hearing, "I think the [Plaintiff's] present status certainly shows disability, it's a matter of before, if we can get it before that onset date quite frankly."  Id. at 69 (R. 68).

Plaintiff, born on September 16, 1957, was 55 years old on her alleged disability onset date and 59 years old when ALJ Casher issued his final decision.  Id. at 71 (R. 70).  She completed high school and has a certification and work experience as an insurance counselor.  Id.

---

[1]      It is unclear whether Plaintiff suffered a single stroke or multiple strokes after her date last insured.  During a hearing before a different Administrative Law Judge, Plaintiff's counsel indicated Plaintiff had an aneurysm and then a stroke in 2014.  Doc. 8-2 at 94–95 (R. 93–94).  However, other medical records refer to Plaintiff having suffered three cerebrovascular accidents.  E.g., Doc. 8-17 at 88 (R. 1206).  Regardless, Plaintiff did not assert at her hearing before ALJ Casher or in her brief to this Court that she suffered any stroke or aneurysm prior to her date last insured, and she confirms "the strokes and its [sic] residuals are not part of Mrs. Warden's claim of disability as they happened after her date last insured had expired . . . ."  Doc. 14 at 24.

## I.   The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since May 15, 2013, her alleged onset date.  Doc. 8-2 at 19 (R. 18).  At step two, ALJ Casher determined Plaintiff had several severe impairments, including cervical degenerative disc disease, insomnia, and peripheral neuropathy.  Id.  The ALJ also determined Plaintiff had several non-severe impairments, including anxiety, depression, obesity, status post gastric bypass, history of clavicle fracture, temperomanibular joint disorder, post-surgical procedure for deviated septum, varicose veins, chronic pain, lumbar degenerative disc disease, and conductive hearing loss.  Id. at 19–20.  However, at the third step, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  Id. at 22.  The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: limited to standing or walking six hours of an eight-hour workday with up to six hours of seated work; avoid climbing ladders

and scaffolds; occasional crawling; lifting or carrying 20 pounds occasionally and 10 pounds frequently; and no exposure to extreme heat or cold.  Id. at 22–26.  At the next step, the ALJ determined Plaintiff could perform her past relevant work in a special agent group insurance job, as that work did not require activities precluded by Plaintiff's residual functional capacity.  Id. at 26.  As ALJ Casher determined Plaintiff could perform her past relevant work, he did not proceed to the fifth and final step.

## II.    Issues Presented

Plaintiff asserts the ALJ erred in two ways.  First, Plaintiff asserts the ALJ erred by not finding that Plaintiff had severe impairments of back pain, anxiety, and depression and failed to consider the combined effects of those impairments in determining Plaintiff's residual functional capacity.  Doc. 14 at 19.  Second, Plaintiff alleges the ALJ did not afford proper weight to the opinions of Plaintiff's treating physician, consultative examiner, and Plaintiff's family.  Doc. 14 at 22–23.

## III.   Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.    The ALJ Properly Considered Plaintiff's Impairments and Their Effects

Plaintiff asserts ALJ Casher erred in finding her anxiety, depression, and back pain impairments were not severe.  Doc. 14 at 19.  Plaintiff emphasizes that she frequently received medication for anxiety and depression from her treating physician, Dr. Lina Harper, and that she also saw Dr. Harper several times throughout 2013 for back pain.  Id. at 20–22.  Plaintiff further argues ALJ Casher did not properly consider the effects of Plaintiff's anxiety, depression, and

lumbar back pain on her ability to work.  Id. at 19.  Plaintiff's contention that ALJ Casher should have found that Plaintiff's anxiety, depression, and back pain were severe impairments is relevant to step two of the evaluation.  Plaintiff's argument that ALJ Casher failed to consider these impairments when determining Plaintiff's residual functional capacity is relevant to step four of the evaluation.

In response, Defendant argues ALJ Casher found that at least one of Plaintiff's impairments was severe and properly considered the remainder of her impairments even though he did not find that they were severe.  Doc. 15 at 5–6.  Defendant further argues substantial evidence supported the ALJ's findings that the combined effect of Plaintiff's impairments would not have prevented Plaintiff from performing light work.  Id. at 6.  Regarding Plaintiff's mental impairments, Defendant notes the ALJ considered medical records showing that Plaintiff was doing "fairly well" and had reasonable control of her anxiety.  Doc. 8-2 at 21 (R. 20).  Defendant argues the ALJ considered Plaintiff's treatment for psychological symptoms by Dr. Harper and also considered Plaintiff's decision not to seek out specialized mental health treatment.  Doc. 15 at 7.  Defendant asserts the majority of medical evidence documenting Plaintiff's heightened mental limitations arose after Plaintiff's date last insured.  Id. at 7–8.  Defendant argues the ALJ properly considered Plaintiff's treatments for back pain.  Id. at 9–10.  Defendant also argues Plaintiff's back pain stabilized following an adjustment in her medication and that her pain level was not so severe as to prevent her from doing light work.  Id. at 10.

### A.    The ALJ Properly Considered Plaintiff's Impairments Regardless of Their Severity

Plaintiff argues the ALJ erred when he found that Plaintiff's medically determinable impairments of back pain, anxiety, and depression were non-severe.  Doc. 14 at 19.  At step two of the disability determination, the ALJ must make a "threshold inquiry" as to the medical

severity of the claimant's impairments.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1520a(a), 404.1523, 416.920(a)(4)(ii), (c), 416.920a(a), & 416.923.  An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, such as the abilities and aptitudes necessary to do most jobs.  20 C.F.R. §§ 404.1521(a)–(b) & 416.921(a)–(b).  In other words, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  McDaniel, 800 F.2d at 1031; see Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting the mere existence of impairments does not reveal the extent to which they limit the claimant's ability to work).

Here, the ALJ concluded that Plaintiff had several severe impairments, including cervical degenerative disc disease, insomnia, and peripheral neuropathy.  Doc. 8-2 at 19 (R. 18).  The ALJ concluded Plaintiff's anxiety, depression, chronic pain, and lumbar degenerative disc disease were non-severe impairments.  Id.

The ALJ's determination that Plaintiff's anxiety and depression were non-severe impairments is supported by substantial evidence.  ALJ Casher noted Plaintiff had no more than mild limitations in four broad areas of her mental functioning.  Id. at 20–21 (R. 19–20).  The ALJ acknowledged Plaintiff had a worsening memory over the five years prior to her date last insured and had slight difficulties in interpersonal interactions, maintaining concentration, and managing herself.  Id.  However, the ALJ also noted these factors were not so severe as to prevent Plaintiff from taking care of her wheelchair-bound husband prior to her date last insured.  Id. at 21 (R. 20).

The only medical records Plaintiff cites in her brief that are relevant to Plaintiff's anxiety or depression and were created prior to her date last insured are treatment records from Dr. Harper.[2]  Contrary to Plaintiff's argument, the ALJ did not ignore "the fact that Mrs. Warden saw Dr. Harper over and over again for anxiety and depression and received medication for those conditions on almost every visit with Dr. Harper over many years."  Doc. 14 at 20.  Rather, the ALJ observed that Plaintiff frequently visited Dr. Harper, but her anxiety was manageable on medication.  Doc. 8-2 at 21 (R. 20).  In particular, Dr. Harper noted in June 2011 that Plaintiff's anxiety was "fairly stable."  Doc. 8-8 at 83 (R. 412).  Dr. Harper also noted in February 2013 that Plaintiff "did well" when taking 2 mg of Xanax and that Plaintiff was "[d]oing much better" one month later in March 2013 when she refilled Plaintiff's Xanax prescription.  Doc. 8-10 at 23–24. (R. 514–515).  The ALJ also observed that Plaintiff did not receive mental health treatment from a psychologist or psychiatrist.  Doc. 8-2 at 21 (R. 20).  This is consistent with the record, which shows that Dr. Harper, a general practitioner, "never referred [Plaintiff] to a mental health specialist."  Id. at 96 (R. 95).

ALJ Casher also considered Plaintiff's reports of chronic back pain but found that Plaintiff's back pain was not a severe impairment.  Id. at 19–20 (R. 18–19).  This finding is also supported by substantial evidence.  The ALJ noted Plaintiff's pain was largely stable on medication.  Id. at 20 (R. 19).  Specifically, the medical records cited by the ALJ show Plaintiff visited Dr. Harper four times between May and August 2013, complaining of worsening back pain after Dr. Harper began weaning down her pain medication.  Doc. 8-10 at 12–18 (R. 503–509).  However, Plaintiff's records also show that her pain was stable in September and

---

[2]     Plaintiff also cites a report prepared by Dr. Marc Eaton that notes Plaintiff's reported history of anxiety and depression, but Dr. Eaton examined Plaintiff on August 30, 2016 and had no direct knowledge of Plaintiff's anxiety and depression during the period when she was insured.  Doc. 8-18 at 20–24 (R. 1242–1246).

November 2013 after settling on a dose of medication.  Id. at 5, 9 (R. 496, 500).  In light of these records, the ALJ's determination that Plaintiff's back pain was a non-severe impairment is supported by substantial evidence.

Even if the ALJ's findings regarding the severity of Plaintiff's impairments were not supported by substantial evidence, the ALJ determined some of Plaintiff's impairments were severe and considered all of Plaintiff's impairments together, regardless of their severity, during the remainder of his analysis.  Accordingly, any error in the determination of Plaintiff's depression, anxiety, and back pain as non-severe impairments was harmless.  As long as the ALJ finds that any impairment is severe and considers all impairments, severe or otherwise, in the remainder of the disability determination, an ALJ's incorrect determination of some impairments as non-severe is harmless.  Freeman v. Comm'r, Soc. Sec. Admin., 593 F. App'x 911 (11th Cir. 2014) (citing Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987)).  Here, the ALJ considered Plaintiff's anxiety, depression, and back pain throughout the disability analysis.  As described above, the ALJ considered in detail Plaintiff's depression, anxiety, and back pain when determining they were non-severe impairments.  Doc. 8-2 at 19–22.  (R. 18–21).  The ALJ considered four different areas of mental functioning when evaluating Plaintiff's depression and anxiety and found that she had no more than mild limitations in each of those areas.  Id. at 20–21 (R. 19–20).  He further considered Plaintiff's treatment records and determined that they reflected that Plaintiff's anxiety and depression had stabilized.  Id. at 21 (R. 20).  The ALJ also evaluated Plaintiff's medical records as they related to her back pain and found her pain was stable and her lumbar spine was relatively normal, aside from Plaintiff's degenerative disc disease.  Id. at 20 (R. 19).

Additionally, when determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's anxiety, depression, and back pain. Id. at 22–25 (R. 21–24). Specifically, the ALJ mentions Plaintiff's depression and notes that Plaintiff stated that she missed her mother's funeral because she did not take her medication correctly. Id. at 21 (R. 22). Similarly, the ALJ discussed Plaintiff's back pain when determining what weight to assign to the statements offered by Plaintiff's husband and son. Id. at 25–26 (R. 24–25). Though the ALJ's mention of these conditions is brief in his discussion of Plaintiff's residual functional capacity, when read in context with the rest of the ALJ's decision, it is apparent that the ALJ considered Plaintiff's depression, anxiety, and back pain throughout his decision. Accordingly, the ALJ fully considered all of Plaintiff's impairments—regardless of whether he considered the impairments to be severe—throughout the entirety of the disability analysis.

**B.      The ALJ's Determination of Plaintiff's Residual Functional Capacity is Supported by Substantial Evidence**

Plaintiff asserts that her non-severe impairments required additional limitations to her residual functional capacity. Doc. 14 at 21. That argument fails. This Court cannot substitute its judgment for that of the ALJ, but instead only looks to determine if the ALJ's conclusions were supported by substantial evidence. Dyer, 395 F.3d at 1210. Substantial evidence supports the ALJ's finding that, as of Plaintiff's date last insured, she possessed the residual functional capacity to perform light work. Doc. 8-2 at 22 (R. 21).

*1.      Mental Impairments*

Substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not merit any additional limitations to her residual functional capacity. As the ALJ noted when determining that Plaintiff's depression and anxiety were non-severe impairments, Plaintiff's medical records show that she was consistently treated for anxiety and depression, but that those

conditions were largely stable.  E.g., Doc. 8-8 at 64, 79, 83, 89; Doc. 8-10 at 22–24 (R. 393, 408,

412, 418, 513–515).  That is not to say that Plaintiff never suffered ill effects from her

depression.  The ALJ considered that Plaintiff's daily activities were sometimes inhibited by her

depression.  Doc. 8-2 at 23 (R. 22).  For example, Plaintiff testified that she missed her mother's

funeral due to her depression and "taking the medicine wrong."  Doc. 8-2 at 77 (R. 76).  On the

other hand, a treatment record prepared by Dr. Harper on November 22, 2013 shows that

Plaintiff "continues as full time caretaker for husband who has Parkinson in 3rd stage."  Doc. 8-

10 at 5 (R. 496).  Plaintiff also indicated at the hearing before the ALJ that, prior to December

2013, she took care of her husband on a full-time basis.  Doc. 8-2 at 77–78 (R. 76–77).

Plaintiff also contends that a report prepared by Dr. Eaton on August 30, 2016 reflects

that her anxiety and depression merited additional limitations to her residual functional capacity.

Doc. 14 at 20–21.  ALJ Casher considered this report but assigned it little weight.  Doc. 8-2 at 21

(R. 20).  While Dr. Eaton did note Plaintiff's struggles with depression and anxiety, Dr. Eaton

saw Plaintiff nearly three years after her date last insured.  Doc. 8-18 at 20 (R. 1242).  Moreover,

a full reading of Dr. Eaton's report reveals that Plaintiff's conditions were largely a result of "3

CVAS" (cerebrovascular accidents).[3]  Id. at 20–24 (R. 1242–1246).  Indeed, Dr. Eaton

diagnosed Plaintiff with vascular dementia without behavioral disturbance in addition to

adjustment disorder with mixed anxiety and depressed mood.  Id. at 24 (R. 1246).  Plaintiff

concedes she did not have this dementia prior to her date last insured.  Doc. 14 at 2–3.  Given the

evidence, the Court finds the ALJ's determination that Plaintiff's mental impairments did not

---

[3]       While the date of these cerebrovascular accidents is not explicitly noted in Dr. Eaton's report,
they likely refer to Plaintiff's stroke(s) in 2014.  Plaintiff does not contend that she suffered a
cerebrovascular accident prior to her date last insured.

merit any additional limitations to her residual functional capacity is supported by substantial evidence.

### 2.    *Back Pain*

Substantial evidence also supports the ALJ's determination that Plaintiff's back pain did not merit any limitations beyond those noted in her residual functional capacity.  The ALJ found that Plaintiff was limited to light work with various postural and environmental limitations as a result of her cervical disc disease and accompanying neck pain.  Doc. 8-2 at 23–24 (R. 22–23).  Specifically, Plaintiff was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking six hours of an eight-hour day with up to six hours of seated work, frequently climbing ramps and stairs, never climbing ladders, ropes, and scaffolds, occasional crawling and no exposure to extreme heat or cold.  Doc. 8-2 at 22 (R. 21).  Plaintiff, however, asserts her lower back pain warranted additional limitations.  Doc. 14 at 21.

Plaintiff specifically contends that, while her back pain had stabilized at one point, it "substantially increased in 2013, prior to the expiration of her date last insured."  Id.  Plaintiff contends she visited Dr. Harper seeking treatment for chronic back pain at least five times between June and November 2013.  Id. at 22.  Records prepared by Dr. Harper show that Plaintiff's increase in back pain was preceded by a reduction in her medication which was being stepped down at Dr. Harper's direction.  Doc. 8-10 at 16 (R. 507).  Over Plaintiff's next two visits in July and August 2013, Dr. Harper gradually increased Plaintiff's pain medication, and by September 23, 2013, Plaintiff's pain was stable on current medications.  Doc. 8-10 at 9–15 (R. 500–506).  In between Plaintiff's August and September visits to Dr. Harper, Plaintiff received an x-ray which showed narrowing of her facet joints at L5-S1, indicative of degenerative change at that level.  Doc. 8-13 at 15 (R. 767).  Plaintiff concedes that by her

November 22, 2013 visit with Dr. Harper, her back pain was "stable with current medications." Doc. 8-10 at 5 (R. 496); Doc. 14 at 22.  This was the same visit where Dr. Harper noted Plaintiff continued to serve as "full time caretaker for her husband who has Parkinson in 3rd stage."  Doc. 8-10 at 5 (R. 496).

Defendant does not dispute that Plaintiff's pain worsened from June to August 2013. Doc. 15 at 10.  However, Defendant emphasizes that, by Plaintiff's date last insured, her pain stabilized as shown in her records from September and November of 2013.  Doc. 8-10 at 5, 9 (R. 496, 500).  Defendant also points out Plaintiff's x-ray showed her disc spaces were preserved and showed no spondylolysis or spondylolisthesis.  Doc. 8-13 at 15 (R. 767).  Defendant further argues that even five months after Plaintiff's date last insured, Plaintiff had normal strength and gait.  Doc. 8-11 at 92–93 (R. 677).

The ALJ considered the evidence Plaintiff points to now when he determined that Plaintiff's back pain was a non-severe impairment.  Doc. 8-2 at 20 (R. 19).  The ALJ also imposed, as previously outlined, various restrictions on Plaintiff's residual functional capacity. Id. at 22–26 (R. 21–25).  The ALJ found those limitations were "supported by the record showing management of the claimant's symptoms with conservative measures and imaging showing no neural compromise in her cervical spine."  Id. at 26 (R. 25).  The Court finds that the ALJ's decision not to impose additional limitations on Plaintiff's residual functional capacity due to her back pain is supported by substantial evidence.  Specifically, substantial evidence supports the ALJ's determination that Plaintiff's back pain, while consistent, was largely stable and did not result, in isolation or in combination with any of Plaintiff's other impairments, in any additional limitations to Plaintiff's residual functional capacity.

In sum, the ALJ's determination of Plaintiff's residual functional capacity is supported by substantial evidence.  Therefore, this enumeration of error is without merit.

## V.    The ALJ Properly Considered the Opinions offered by Dr. Eaton, Dr. Harper, and Plaintiff's Family

Plaintiff asserts ALJ Casher improperly discounted the evidence presented by Dr. Harper and Dr. Eaton, as well as statements Plaintiff's husband and son made regarding her condition prior to her date last insured.  Doc. 14 at 23.  However, ALJ Casher properly considered all of this evidence and was within his discretion in giving it little weight.

### A.    The Opinions of Dr. Harper

Plaintiff contends that the ALJ erred by not giving sufficient weight to the opinions of Dr. Harper presented in her medical source statements prepared on July 14, 2016 concerning Plaintiff's mental and physical abilities.  Doc. 14 at 24–27.  In the July 14, 2016 source statement, Dr. Harper opined that Plaintiff suffered from "cervical spinal stenosis, chronic back pain degenerative disc disease, status post CVA (stroke), [and] status post cerebral aneurysm coiling procedure."  Doc. 8-16 at 84 (R. 1090).  As a result of these impairments, Dr. Harper opined that Plaintiff should be limited to lifting or carrying less than 10 pounds frequently and occasionally, that Plaintiff could stand or walk less than two hours in an eight hour workday, sitting less than six hours in an eight hour workday, limited pushing and pulling in upper and lower extremities, as well as considerable manipulative limitations.  Id. at 84–86 (R. 1090–1092).  Dr. Harper also opined that Plaintiff would have to be absent more than three times a month from work due to her conditions.  Id. at 86 (R. 1092).  Concerning Plaintiff's mental abilities, Dr. Harper opined that Plaintiff possessed moderate limitations in her ability to understand and carry out simple instructions and in her ability to interact with the public,

supervisors, and co-workers.  Id. at 80–81 (R. 1086–1087).  Dr. Harper also opined that Plaintiff

possessed marked limitations in her ability to understand and carry out detailed instructions and

make judgments on simple work-related tasks and extreme limitations in her ability to respond

appropriately to normal work pressures or changes.  Id.  Dr. Harper stated these limitations were

due to Plaintiff's strokes, aneurysms, severe anxiety, and major depressive disorder.  Id.

The ALJ considered these opinions by Dr. Harper when determining the severity of

Plaintiff's impairments and Plaintiff's residual functional capacity but assigned them "little

weight, because they were given over two and a half years after the claimant's date last insured,

and do not limit themselves to that period.  Also, the statements took into account the effects of

the claimant's cerebrovascular accident that occurred subsequent to her date last insured."  Doc.

8-2 at 25 (R. 24).  The ALJ discounted Dr. Harper's opinions because they were inconsistent

with Plaintiff's hearing testimony and Dr. Harper's own November 22, 2013 treatment note

documenting that Plaintiff was a caretaker for her husband, as well as Dr. Harper's records

reflecting that Plaintiff's pain had stabilized on medication.  Id.

Plaintiff first argues the ALJ incorrectly concluded that Dr. Harper's opinion was based

on impairments that arose after her date last insured (i.e., Plaintiff's cerebrovascular incidents).

Doc. 14 at 24–25.  Plaintiff argues that, although Dr. Harper gave her opinion on July 14, 2016,

the opinion was actually "based on Mrs. Warden's work abilities prior to December, 2013."  Id.

Plaintiff additionally maintains the ALJ erred because he did not follow Social Security Ruling

96-2p, which concerns the deference afforded a treating source's medical opinion.  Id. at 26–27.

Plaintiff asserts that, had the ALJ properly followed this ruling, the opinions of Dr. Harper would

have been afforded controlling weight.  Id.  Plaintiff alternatively argues the ALJ did not cite any

medical evidence in support of his determination of Plaintiff's work abilities as of her date last

insured.  Finally, Plaintiff argues that, if the ALJ had questions regarding Dr. Harper's opinions, he was required to recontact her for verification and call an independent medical expert to give an opinion at the hearing.  Id. at 28–29.

Defendant asserts the ALJ was correct in giving little weight to the opinions of Dr. Harper because the opinions were based on evidence after Plaintiff was eligible for benefits and were inconsistent with other substantial evidence of record.  Doc. 15 at 12.  Defendant also asserts the ALJ did not violate Social Security Ruling 96-2p because he articulated good cause for discrediting Dr. Harper's opinion.  Id. at 14.  Defendant contends the ALJ had no duty to recontact Dr. Harper or call a medical expert to give an opinion at the hearing.  Id. at 15–16. Defendant asserts the ALJ cited sufficient medical evidence in determining Plaintiff's residual functional capacity.  Id. at 15.

### 1. Substantial evidence supports the ALJ's determination that Dr. Harper's opinions considered Plaintiff's strokes and aneurysm.

As a threshold matter, is important to clearly establish what impairments Dr. Harper considered when preparing her medical source statements.  Plaintiff contends Dr. Harper based her July 14, 2016 statements on Plaintiff's abilities prior to her date last insured.  Doc. 14 at 24. However, substantial evidence supports the ALJ's determination that Dr. Harper did, in fact, consider Plaintiff's impairments after her date last insured.  Dr. Harper rendered her opinion on July 14, 2016, and a review of the medical source forms Dr. Harper completed does not contain any indication Dr. Harper limited her consideration to Plaintiff's condition at the end of 2013. Doc. 8-16 at 80–86 (R. 1086–1092).  The only mention of timeframe on the forms is a disclaimer on the first page stating: "To assist in determining this individual's ability to do work related activities prior to December, 2013, please give us your professional opinion of what the individual *can still do* despite his/her impairment(s)."  Id. at 80, 84 (R. 1086, 1090) (emphasis

added).  Despite this disclaimer, both sources statements are replete with references to Plaintiff's

strokes and aneurysm.  E.g., id. at 81 (R. 1087) (diagnosing Plaintiff with "poor short-term

memory as a result of strokes/cerebral aneurysm, severe anxiety [and] major depressive

disorder.")  The record, therefore, indicates Dr. Harper's opinions were based on Plaintiff's

capabilities on July 14, 2016, the date Dr. Harper signed the form.  Id. at 86.  Plaintiff herself

notes in her brief that Dr. Harper's determination of Plaintiff's limitations took into account her

"CVA (stroke), status post aneurysm, and cervical spinal stenosis."  Doc. 14 at 25.  Substantial

evidence supports the ALJ's determination that Dr. Harper's opinion did not limit itself to

Plaintiff's condition prior to her date last insured.  Doc. 8-2 at 25 (R. 24).

### 2.   *The ALJ was within his discretion in giving little weight to Dr. Harper's opinions.*

Plaintiff's next argument is that the ALJ erred because he did not follow Social Security

Ruling 96-2p, which concerns the deference afforded a treating source's medical opinion.  Doc.

14 at 26–27.  Plaintiff asserts that, had the ALJ properly followed this ruling, the opinion of Dr.

Harper would have been afforded controlling weight.  Id.  Defendant responds that the ALJ did

not violate Social Security Ruling 96-2p because he articulated good cause for discrediting Dr.

Harper's opinion.  Doc. 15 at 14.

### (a)   *Law does not always require the ALJ to afford controlling weight to the opinion of a treating physician.*

"Medical opinions are statements from physicians and psychologists or other acceptable

medical sources that reflect judgments about the nature and severity of [the claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the

claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."

Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in

original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)).  "The ALJ has wide latitude to

determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." <u>Zanders v. Colvin</u>, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013).

For claims like Plaintiff's, filed before March 27, 2017, an ALJ must, in certain circumstances, give controlling weight to the medical opinion of a physician who has rendered ongoing treatment to a claimant.[4]  20 C.F.R. § 404.1527(c)(2).  Specifically, the ALJ must give controlling weight to the opinion of a treating physician where the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"  <u>Id.</u>  A medical opinion "need not be supported directly by all of the other evidence" to be not inconsistent with the record; however, if there is "substantial evidence in the case record that contradicts or conflicts with the opinion[,]" then the opinion is not entitled to controlling weight.  Social Security Ruling 96-2p.  If the ALJ determines the opinion of a treating physician is not entitled to controlling weight, he must look to a variety of factors when determining what weight to afford a medical opinion, including the nature, length, and frequency of the treatment, the opinion's consistency with the rest of the record, and any other factors which tend to support or contradict the medical opinion.  20 C.F.R. § 404.1527(c).

The law of this circuit has established a corollary requirement that "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary."  <u>Lewis</u>, 125 F.3d at 1440 (internal quotations omitted).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence

---

[4]     For claims filed on or after March 27, 2017, adjudicators of Social Security claims are not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d

at 1241). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a

treating physician, and the failure to do so is reversible error." Lewis, 125 F.3d at 1440.

> (b)     *The ALJ was within his discretion in affording little weight to Dr.*
> *Harper's opinions.*

Plaintiff argues the ALJ was required to give controlling weight to Dr. Harper's opinions.

Doc. 14 at 26–27.  However, Dr. Harper's opinions are not consistent with other substantial

evidence of record and, therefore, not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2).

First, the opinions are inconsistent with all the medical evidence noting, as Plaintiff concedes,

that Plaintiff did not have any strokes or aneurysms prior to her date last insured.  Doc. 14 at 23.

Second, looking to Dr. Harper's opinions regarding Plaintiff's anxiety, depression, and physical

limitations, it is not clear to what extent these conditions were exacerbated by Plaintiff's stroke

and subsequent aneurysm, and Dr. Harper's opinion does not attempt to delineate between these

two sets of impairments (pre- and post-date last insured).  Doc. 8-16 at 80–86 (R. 1086–1092).

Additionally, Dr. Harper's opinions regarding the severity of Plaintiff's impairments are

contradicted by substantial evidence in the form of earlier records Dr. Harper prepared indicating

that Plaintiff's anxiety and depression were stable prior to Plaintiff's date last insured.  E.g., Doc.

8-10 at 9, 15 (R. 500, 509).  This substantial, contradictory evidence not only alleviates any

requirement that the ALJ give controlling weight to Dr. Harper's opinions, it also constitutes

good cause to discount the opinion in general.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155,

1159 (finding good cause to discount the opinion of a treating physician when that opinion was

inconsistent with that same physician's treatment notes and unsupported by the medical

evidence).

The ALJ also clearly articulated his reasons for giving little weight to Dr. Harper's opinions.  Doc. 8-2 at 25 (R. 24).  The ALJ noted that the opinions were not limited to Plaintiff's impairments prior to her date last insured.  Id.  He further noted that the opinions contradicted not only earlier medical records prepared by Dr. Harper, but also the evidence indicating that Plaintiff had served as a full-time caretaker for her husband.  Id.  Because substantial evidence in the record contradicts Dr. Harper's opinions and the ALJ clearly articulated his reasons for discounting those opinions, the ALJ was within his discretion in giving little weight to Dr. Harper's opinions.

3.   *The ALJ cited medical evidence when determining Plaintiff's residual functional capacity.*

Plaintiff also argues the ALJ did not cite any medical evidence in support of his determination of Plaintiff's work abilities as of her date last insured and that he was required to do so.  Doc. 14 at 28.  Defendant asserts the ALJ noted several medical records when determining Plaintiff's residual functional capacity.  Doc. 15 at 14–15.

The residual functioning capacity assessment "must always consider and address medical source opinions.  If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Social Security Ruling 96-8p.  "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability."  Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007).

Here, the ALJ cited to considerable medical evidence, including the medical source opinions prepared by Dr. Harper and Dr. Eaton, in determining Plaintiff's residual functional capacity.  Doc. 8-2 at 25 (R. 24).  The ALJ's determination of Plaintiff's residual functional capacity is based on many of Plaintiff's medical records, in addition to other evidence.  Id. at 22–

25 (R. 21–24).  As an example, the ALJ cited to records pertaining to Plaintiff's cervical spine, insomnia, and peripheral neuropathy.  E.g., Doc. 8-8 at 10, 60, 72; Doc. 8-10 at 20, 37; Doc. 8-16 at 65 (R. 339, 389, 401, 511, 528, 1071).  The ALJ relied on these records when determining that Plaintiff had some limits to her residual functional capacity.  Furthermore, the ALJ cited to numerous medical records when determining that Plaintiff's anxiety, depression, and back pain were non-severe impairments and continued to consider those records and impairments throughout the remainder of his analysis.  E.g., Doc. 8-8 at 64, 79, 83, 89; Docs. 8-10 at 22–24; (R. 393, 408, 412, 418, 513–515).  The ALJ, therefore, correctly cited medical evidence when determining Plaintiff's residual functional capacity.

### 4.    *The ALJ was not required to recontact Dr. Harper or call a medical expert at the hearing.*

Plaintiff finally argues that, if the ALJ had questions regarding Dr. Harper's opinions, he was required to recontact her for verification or call an independent medical expert to give an opinion at the hearing.  Doc. 14 at 28–29.  Defendant responds that the ALJ had no duty to recontact Dr. Harper or call a medical expert to give an opinion at the hearing.  Doc. 15 at 15–16.

Where the evidence of record is insufficient and the ALJ cannot determine whether a claimant is disabled, the ALJ may take a number of steps, including recontacting a medical source, requesting additional evidence, or asking the claimant to undergo a consultative exam.  20 C.F.R. § 416.920b(b).  However, "the mere determination a medical opinion is inconsistent does not require an ALJ recontact the source before discounting that evidence."  Wright v. Colvin, No. CV 115-024, 2016 WL 4500521, at *1 (S.D. Ga. Aug. 26, 2016) (citations omitted).  The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."  Ingram, 496 F.3d at 1269.  An ALJ is also not

22

required to recontact a medical source where the ALJ has the "necessary information to determine [claimant's] impairments, her residual functional capacity, and her ability to work." Robinson v. Astrue, 365 F. App'x 993, 999 (11th Cir. 2010).

The sufficiency of the record and the ALJ's citation to substantial medical evidence are relevant to Plaintiff's arguments that the ALJ should have recontacted Dr. Harper and called a medical expert to give an opinion at the hearing.[5] Castle v. Colvin, 557 F. App'x 849, 854 (11th Cir. 2014) (holding that a consultative examination was not necessary when there was a full and fairly developed record). The ALJ is not required by regulation to recontact a medical expert or to call an expert to testify. The ALJ may recontact an expert or call for a consultative examination where there is insufficient evidence to determine a claimant's disability or if the ALJ is unable to reach a conclusion after considering the evidence. 20 C.F.R. § 416.920b(b)(2). Common law likewise imposes no obligation on the ALJ to continue developing the record through these means "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram, 496 F.3d at 1269.

In this case, there was sufficient evidence in the record for the ALJ to make an informed decision, and the ALJ did not express any inability to reach a conclusion regarding Plaintiff's disability after considering that record. There is no evidence that ALJ Casher found Dr. Harper's opinions confusing or that he did not have enough medical evidence to determine Plaintiff's residual functional capacity. The ALJ's determination of Plaintiff's residual functional capacity is supported by substantial evidence, and the ALJ reasonably determined Dr. Harper's opinions

---

[5] Plaintiff's argument that the ALJ should have called a medical expert to give an opinion at the hearing is without citation to law or any further elaboration. Doc. 14 at 29. The Court is not aware of any requirement that an ALJ must call a medical expert to give testimony at a hearing. Plaintiff is likely referring to the ALJ's ability to call for a consultative examination when the evidence of record is insufficient to make a disability determination.

were inconsistent with substantial evidence.  In these circumstances, ALJ Casher did not err by failing to recontact Dr. Harper or failing to call a medical expert to give an opinion at the hearing.

**B.**     **The Opinions of Dr. Eaton**

Plaintiff argues the ALJ should have given greater weight to Dr. Eaton's opinion that, as of his August 30, 2016 examination of Plaintiff, she had limited mental functioning.  Doc. 14 at 24.  When determining the severity of Plaintiff's mental impairments at the time of her date last insured, the ALJ gave Dr. Eaton's opinions "little weight" because they "were given over two and a half years after the claimant's date last insured, and do not limit themselves to that period. Further they take into account the effects of the claimant's cerebrovascular accident that occurred subsequent to her date last insured."  Doc. 8-2 at 21 (R. 20).  The ALJ concluded Dr. Eaton's report was inconsistent with the statement Plaintiff made during the hearing "that she was able to care for her husband full-time throughout the period at issue[,]" and the November 22, 2013 treatment record "where the claimant reported she was full time caretaker for her husband."  Id.  The ALJ also concluded Dr. Eaton's opinion was inconsistent with Plaintiff's medical records reflecting that she was doing reasonably well with her treatment for depression and anxiety.  Id.

Plaintiff does not assert the ALJ should have given greater weight to Dr. Eaton's opinions in his determination of the severity of Plaintiff's impairments or in determining Plaintiff's residual functional capacity.  Instead, Plaintiff argues her own testimony was unreliable and should not have been considered by the ALJ, because Dr. Eaton said she was mentally impaired at the time she gave that testimony.  Doc. 14 at 23–24.  Specifically, Plaintiff asserts Dr. Eaton's report illustrates that, by the date of the hearing before the ALJ, Plaintiff's mental faculties had

deteriorated such that the ALJ "should not have relied on the testimony of Mrs. Warden given at the hearing that she was a caretaker of her husband and mother prior to the expiration of her date last insured." Id. at 24.

This argument is without merit. The ALJ was aware of Plaintiff's mental impairments as of the date of her hearing and discussed them at some length with Plaintiff's counsel immediately prior to hearing Plaintiff's testimony. Doc. 8-2 at 69–70 (R. 68–69). Moreover, Plaintiff's counsel offered argument to the ALJ immediately following his questioning of Plaintiff and suggested that Plaintiff's statement regarding the care of her husband may not be accurate, stating, "I think as of the end of 2011 is when [Plaintiff taking care of her husband and mother] pretty much stopped according to the statements of her son and her husband[.]" Id. at 79 (R. 78). Notably, Plaintiff's testimony was consistent was Dr. Harper's contemporaneous medical records. Given these facts, the Court can safely reason the ALJ considered Plaintiff's mental impairments when evaluating Plaintiff's testimony at the hearing but still found that testimony credible and reliable.

The Court is not in a position to challenge that credibility determination. "[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212. The Court can look to other evidence of record to determine if the ALJ's ultimate determination regarding Plaintiff's disability is supported by substantial evidence, but the Court cannot supplant the ALJ's credibility determination with one of its own. Bloodsworth v. Heckler, 702 F.2d 1233, 1242 (11th Cir. 1983) (finding that substantial evidence did not support the ALJ's rejection of plaintiff's disability claim but noting that the court was bound to accept the ALJ's determination that the testimony of plaintiff and his wife was not credible). It is not the place of courts to "decide facts anew, reweigh the evidence, or substitute [their] judgment for that of the

Secretary." Id. at 1239.  Accordingly, the Court must accept the ALJ's determination that Plaintiff's hearing testimony that she cared for her husband and mother prior to her date last insured was credible.

Moreover, the ALJ did not rely heavily on Plaintiff's statement made during the hearing that she was a caretaker for her husband.  The ALJ mentions the statement in conjunction with Plaintiff's November 22, 2013 treatment record that Plaintiff was continuing as caretaker for her disabled husband.  Doc. 8-2 at 21, 25, 26 (R. 20, 24, 25).  Plaintiff does not assert her mental faculties were impaired at the time of that visit with Dr. Harper.  Doc. 14 at 23 ("[Plaintiff] suffered debilitating strokes and post aneurysm residuals after the expiration of her date last insured of December 31, 2013.").  As previously noted, the ALJ also cited to other substantial medical evidence when making his determination that Plaintiff was not disabled.  E.g., Doc. 8-8 at 64, 79, 83, 89; Doc. 8-10 at 22–24 (R. 393, 408, 412, 418, 513–515).  The ALJ was permitted to find Plaintiff's testimony credible and reliable, and even if the ALJ's reliance on Plaintiff's testimony was misplaced, the ALJ's findings were supported by substantial evidence apart from Plaintiff's testimony, rendering any possible error harmless.

## C.      The Opinions of Plaintiff's Family

Plaintiff finally argues, briefly and without citation to law, that the ALJ should not have discounted the statements of Plaintiff's husband and son regarding her residual functional capacity as of her date last insured.  Doc. 14 at 23.  At base, Plaintiff argues her husband and son offered statements saying her residual functional capacity on the date last insured was lower than ALJ Casher's determination.  Id.  Plaintiff's husband, Jeffrey Warden, provided a statement dated July 5, 2016, stating that Plaintiff was unable to care for him by 2008 or 2009 and that her health began to deteriorate around 2008.  Doc. 8-7 at 83–85 (R. 306–308).  Plaintiff's son, also

26

named Jeffrey Warden, provided a statement dated July 13, 2016, stating that when he moved

home in November 2011, Plaintiff frequently had to lie in bed.  Id. at 63 (R. 286).  The ALJ gave

little weight to both of these opinions because they were inconsistent with Plaintiff's testimony at

the hearing that she was able to care for her husband through 2013, as well as medical records

showing the same and reflecting that her pain was stable on medications during the fall of 2013.

Doc. 8-2 at 25–26 (R. 24–25).

   An ALJ is under no obligation to afford any particular weight to opinions from non-

medical sources.  The ALJ instead must only consider those opinions and then explain the weight

afforded to them in such a way that his reasoning can be followed.  20 C.F.R. § 404.1527(f).

Here, the ALJ did so.  Moreover, substantial evidence supports his determination to afford little

weight to the opinions of Plaintiff's husband and son.  Medical records indicate that Plaintiff's

pain was stable as of her date last insured and that she was acting as a full-time caretaker for her

husband.  Doc. 8-12 at 7 (R. 686).  The ALJ was within his discretion in relying on this evidence

to discount the opinions of Plaintiff's husband and son.

   In sum, the ALJ's determination to give little weight to the opinions of Plaintiff's treating

physicians and family is supported by substantial evidence and is clearly articulated.[6]  The ALJ

did not rely heavily on Plaintiff's hearing testimony, and he was best situated to determine the

credibility, or lack thereof, of that testimony.  The ALJ had good cause to discount the opinions

of Dr. Harper because the opinions reflected Plaintiff's condition after her date last insured.

Additionally, ALJ Casher was under no obligation to recontact Plaintiff's medical sources

because those sources were clear, though, in the opinion of the ALJ, inconsistent with other

---

[6] Plaintiff's medical records are voluminous.  Docs. 8-8 to 8-20.  While the Court focused only on
the portions of the record that are relevant to Plaintiff's enumerations of error, it is evident ALJ Casher
reviewed and considered Plaintiff's medical conditions as a whole.  Doc. 8-2.

evidence of record and the record had sufficient evidence to allow the ALJ to render an opinion. Accordingly, Plaintiff's assertions to the contrary are without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA